UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL F. LOWER, | ) |
| Plaintiff, | ) CASE NO. C06-0915 MJP-MJB |
| v. | ) REPORT AND |
| MICHAEL J. ASTRUE,[1] | ) RECOMMENDATION |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

Plaintiff Michael F. Lower appeals to the District Court from a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for Disability Insurance Benefits and Supplemental Security Income under the Titles II and XVI of the Social Security Act. For the reasons set forth below, it is recommended that the Commissioner's decision be AFFIRMED.

I. PROCEDURAL HISTORY

Plaintiff protectively filed for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on February 23, 2004, (Tr. 43) alleging disability since January 3, 2004. Tr. 46-48. Plaintiff identified his impairments as paranoid schizophrenia, obsessive compulsive disorder ("OCD"), sleep apnea and depression. Tr. 55. The Social Security Administration denied Plaintiff's application initially (Tr. 23-26) and upon reconsideration. Tr. 28-29. A hearing

---

[1] Michael J. Astrue became Commissioner of Social Security on February 12, 2007.

REPORT AND RECOMMENDATION
PAGE - 1

was held before Administrative Law Judge ("ALJ") Verrell Dethloff, on September 9, 2005. Tr. 450-464. Plaintiff, who was represented by counsel, testified at the hearing. Tr. 453-461. The ALJ issued an unfavorable decision on March 1, 2006, finding that Plaintiff could return to his past relevant work and was not disabled within the meaning of the Social Security Act. Tr. 11-20. On June 15, 2006, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 6-8. Plaintiff timely filed his appeal with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff requests that the Court reverse the Commissioner's decision and remand for further administrative proceedings. Plaintiff argues that the ALJ erred by: (1) failing to consider or include Plaintiff's exertional limitations in his Residual Functional Capacity (RFC) assessment when he found Plaintiff's sleep apnea to be severe at step 2; (2) failing to find Plaintiff's impairments do meet or equal any of the medical impairments listed in step 3; (3) failing to provide clear and convincing reasons for rejecting Plaintiff's testimony regarding his fatigue from sleep apnea; (4) erroneously rejecting Plaintiff's testimony regarding the degree of limitation he suffers as a result of his mental impairments; (5) improperly rejecting the testimony of lay witnesses, Ms. McCarthy, A.R.N.P and Ms. Werney, A.R.N.P; and (6) improperly "ignoring" the opinions of Dr. Sandvick and Dr. Parlatore regarding Plaintiff's functional limitations. The defendant responds that the Commissioner's decision should be affirmed because the ALJ applied the correct legal standards and supported his decision with substantial evidence.

## III. STANDARD OF REVIEW

The court may set aside the Commissioner's denial of social security disability benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence is

REPORT AND RECOMMENDATION
PAGE - 2

defined as more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion which must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

## IV.  EVALUATING DISABILITY

The claimant bears the burden of proving that he is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423 (d)(1)(A).

The Social Security regulations set out a five-step sequential evaluation process for determining whether claimant is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. § 416.920. At step one, the claimant must establish that he or she is not engaging in any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the claimant must establish that he or she has one or more medically severe impairments or combination of impairments. If the claimant does not have a "severe" impairment, he or she is not disabled. *Id.* at § (c). At step three, the Commissioner will determine whether the claimant's impairment meets or equals any of the listed impairments described in the regulations. A claimant who meets one of the listings is disabled. *See Id.* at § (d).

At step four, if the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner evaluates the claimant's residual functional capacity

and the physical and mental demands of the claimant's past relevant work. *Id.* at § (e). If the claimant is not able to perform his or her past relevant work, the burden shifts to the Commissioner at step five to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience. *Id.* at § (f); *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled.

## V.  SUMMARY OF THE RECORD EVIDENCE

Plaintiff, who was born in September 1954, was 51 years old at the time of the ALJ's decision. Tr. 46. He served in the military between 1972 and 1974 and later obtained a Masters Degree in Theology. Tr. 46, 453. His past work included work as a full-time minister, custodian/janitor and a retail store greeter. Tr. 55-56. During his hearing, Plaintiff indicated that his tendonitis and sleep apnea limit his ability to work as a janitor because he is unable to hold a mop, fatigued and unable to stay awake. Tr 453-56. Plaintiff has been diagnosed with paranoid schizophrenia, which has led to two incidents of psychotic behavior that required hospitalization. In the first incident, Plaintiff suffered a break from reality and fled to London to become King and believed the CIA to be after him. Tr. 57, 155, 174, 458. The second incident involved Plaintiff being hospitalized for auditory hallucinations in 1985. *Id*. Plaintiff has been prescribed medications for these psychological conditions since 1985. Tr. 155, 174. In February, 2006, Plaintiff was diagnosed with severe obstructive sleep apnea syndrome. Tr. 206. Other evidence relevant to Plaintiff's claims is incorporated into the discussion below.

## VI.  THE ALJ'S DECISION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability. Tr. 19. He determined that Plaintiff has the following severe

REPORT AND RECOMMENDATION
PAGE - 4

impairments: psychotic disorders, sleep apnea, and sleep-related breathing disorder. *Id*. The ALJ found that these impairments do not meet or equal one of the listed impairments in Appendix 1, Subpart P of the Regulations. *Id*.

The ALJ determined that Plaintiff's RFC allows Plaintiff to engage in a full range of physical work activity, with mental impairments restricting him to more simple repetitive jobs with limited interaction with the public. Tr. 20. The ALJ further found that Plaintiff's medically determinable functional psychotic disorders, sleep apnea, and sleep related breathing disorders do not preclude him from returning to his past relevant work as a janitor. *Id*. In reaching this conclusion, the ALJ found that Plaintiff's testimony regarding his limitations were not totally credible. *Id*. The ALJ ended his analysis at step four.

## VII.  DISCUSSION

A.  Evaluation of Medical Evidence

Plaintiff argues that the ALJ erroneously "ignored" the findings of examining physicians Dr. David Sandvik and Dr. Anslem A. Parlatore regarding Plaintiff's functional limitations. Dkt. #15 at 16. Plaintiff claims that the ALJ's disregard for the physicians' reports is evidenced by his: (1) failure to explicitly reject the physicians' opinion, (2) failure to offer reasons to discount them, and (3) rejection of the corroborating opinions of both Advanced Registered Nurse Practitioners, (A.R.N.P.'s). *Id*. Dkt. #15 at 16. The Commissioner argues that Dr. Sandvik offered no opinion of Plaintiff's functional limitations and Dr. Parlatore merely accepted Plaintiff's subjective conclusion that his "paranoia interfered with his daily life" without support by clinical evidence. Dkt. #16 at 9-11.

The Commissioner is correct in pointing out that Dr. Sandvik renders no opinion on Plaintiff's functional limitations. But rather, Dr. Sandvik does assign a Global Assessment of Functioning in which he gives Plaintiff a score of 40 along with the comment that "[a]t times he

is very paranoid with impairment in work, relationships, and judgment." Tr. 157. The Commissioner argues that this score demonstrates that Plaintiff's mental impairments do not meet the definition for serious functional impairment and cannot form the basis of disability.[2] Dkt. #16 at 10. In fact, the Commissioner is correct that this score alone does not satisfy or meet a finding of disability.

Plaintiff argues error by the ALJ's rejection of Dr. Parlatore's opinion. Dr. Parlatore's opinion that Plaintiff showed marked limitations due to his paranoid behavior, hallucinations and thought disorder can form the basis of a functional impairment. Tr. 263. Dr. Parlatore found that Plaintiff showed marked functional limitations in his ability to relate appropriately to co-workers and supervisors and in his ability to interact appropriately in public contacts. Tr. 264. Finally, he found Plaintiff had severe limitations in his ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. *Id*. The ALJ's finding of not disabled, however, appears to be derived in part, from the contradictory opinion of Matthew Comrie, Psy.D, a state agency psychologist. Tr. 177-180. Considered a medical expert on disability claims under the Act by the Government, (Dkt. #16 at 10), Dr. Comrie's RFC assessment was that "Plaintiff has the RFC for a full range of physical work activity, with mental impairments restricting him to more simple repetitive jobs with limited interaction with the public." Tr. 179-80.

It is true that Dr. Comrie's opinion in 2004 does not address the physical limitations produced by the very severe sleep apnea objectively verified in 2005. The Commissioner argues, however, that Plaintiff's testimony includes inconsistent reasons for leaving his previous jobs and

---

[2] A GAF of 40 indicates that claimant has "[s]ome impairment in reality testing or commination or major impairment in several areas such as work or school, family, and is unable to work..." *See* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders*, 34 (4th T.R. ed. 2000). A GAF score of 41-50 indicates serious impairment in social, occupational or school functioning. *Id.*

REPORT AND RECOMMENDATION
PAGE - 6

that he also failed to follow prescribed regime by not replacing his broken CPAP. Dkt. #16 at 6-7. These reasons, however, were never raised by the ALJ and as such shall not be evaluated by this Court. *See Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) (Court cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision.) (*Citing SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S. Ct. 1575 (1947)). In fact, the ALJ's opinion refers to the polysomnogram which revealed very severe obstructive sleep apnea. As a medically determinable condition, sleep apnea is a likely basis for daytime drowsiness and a contributing cause for Plaintiff's loss of work. Thus, on these grounds, the ALJ's finding that Plaintiff was partially credible or "not totally credible is not supported by the record.

The ALJ's most salient reason for rejecting Dr. Parlatore's opinion and adopting Dr. Comrie's RFC assessment of mental impairments was that the 2005 clinic treatment notes of the treating nurse practitioners which identify inconsistencies in Plaintiff's statements. They also show that Plaintiff's proper use of the CPAP for his sleep apnea improved his mental and physical conditions starting in April through June 2005. This kind of medical improvement demonstrates that Plaintiff's sleep apnea is not a condition that will satisfy the 12 month duration requirement. *See,* 42 U.S.C. Section 423d(1)(A).

The ALJ also points to those notes which reflect improvement in the twenty year history of Plaintiff's treatment at Whatcom Counseling and Psychiatric Clinic. Tr. 173, 174. The ALJ cites to Plaintiff's own report that, "Abilify [his medication] is good. I have no paranoia whatsoever." Dkt. #14 at 17. Further, the ALJ cites to the notes from one of the nurse practitioners as saying, " In the course of treatment here, he has been maintained on the low doses of Haldol between 1and 5 mg at bedtime." Tr. 14 at 17. This record constitutes substantial evidence of the ALJ"s findings that Plaintiff is not disabled. Accordingly, Plaintiff's claims of error assigned one through five are unsupported.

REPORT AND RECOMMENDATION
PAGE - 7

B.  Lay Witness Testimony

In his sixth claim of error, Plaintiff argues that the ALJ improperly rejected the evaluations of nurse practitioners McCarthy and Werny's, in which they concluded Plaintiff's mental condition caused him marked and severe functional limitations. Dkt. #15 at 14-15. The Commissioner argues that the ALJ properly considered and weighed both "lay" opinions. Dkt. #16 at 12-14. A.R.N.P.'s are not doctors and under the Social Security Act regulations they are not acceptable medical sources. 20 C.F.R. §§ 404.1513.(d)(4), (e). The ALJ need only provide germane reasons to reject sources which are not medically acceptable. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). An ALJ may reject such testimony only if "reasons germane to each witness" are given. *Dodrill*, 12 F.3d at 919.

Unquestionably, the ALJ's reasons for according their opinions less weight are germane. In this case, the ALJ stated that from the A.R.N.P.'s evaluations from March 3, 2004 and August 11, 2004, he found (1) no indication that a psychologist or psychiatrist had been involved in the forming of the opinions; and (2) that a finding of severe and marked impairment with regard to limitations on mental functioning is inconsistent with their 2005 treatment notes. Tr. 17-18. The record supports these findings. Tr. 196-199, 200-203. Nurse Practitioner Melinda Werny's August 11, 2004 evaluation of Plaintiff's mental functional limitations as "marked" and "severe" is inconsistent with her subsequent treatment notes of April through June, 2005. Tr. 200-03, 211-49, 270-79. These treatment notes show that Plaintiff reports "doing good, feels pretty steady, no paranoia, no compulsive behaviors, no psychotic symptoms, denies depression, cheerful, denies side effects, continuous activity in the church, feels OCD is good, no hallucinations, no breaks with reality." Tr. 211-49, 270-79.

Properly considered as lay witness testimony, the A.R.N.P.'s notes shed considerable light on Plaintiff's course of treatment over the past year, demonstrating that he was adjusting to

REPORT AND RECOMMENDATION
PAGE - 8

his condition and his reliance upon medications. Plaintiff's sixth claim of error here is unsupported.

## VIII. CONCLUSION

The Commissioner's determination to deny Plaintiff SSI and DIB benefits is free of legal error. Therefore based on the record evidence, the undersigned recommends that the Commissioner's decision be AFFIRMED. A proposed Order accompanies this Report and Recommendation.

DATED this 29th day of May, 2007.

MONICA J. BENTON
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 9