UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL F. LOWER,

               Plaintiff,

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

              Defendant.

CASE NO. C06-0915MJP

ORDER REVERSING THE
COMMISSIONERS DECISION
AND REMANDING FOR AN
AWARD OF BENEFITS.

This matter comes before the Court on United States Magistrate Judge Benton's Report and Recommendation, (Dkt. No. 19) and Plaintiff Lower's objections to that Report and Recommendation. (Dkt. No. 20.)  The Court, having reviewed the entire record, including the administrative record, the memoranda of the parties, the Report and Recommendation of Magistrate Judge Benton, Plaintiff Lower's objections, and the Defendant's response (Dkt. No. 21) ORDERS as follows:

    (1)    The Court declines to adopt Magistrate Judge Benton's Report and Recommendation;

    (2)    The Court REVERSES the Commissioner's final decision;

    (3)    The Court REMANDS this case to the Commissioner to calculate an award of benefits.

## BACKGROUND

Plaintiff Lower appeals to the Court from a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). Magistrate Judge Benton issued a Report and Recommendation affirming the Administrative

ORDER REVERSING COMMISSIONER- 1

Law Judge's ("ALJ") denial of SSI and DIB benefits.  Plaintiff makes seven objections to Magistrate Judge Benton's Report and Recommendation, and requests that the Court reverse the Commissioner and either (1) find him disabled and remand for an award of benefits, or (2) remand for further proceedings.

Lower is a fifty-three year old male with a Masters Degree in Theology. (Administrative Record ("AR") at 46, 453.)  His past work experience includes employment as a janitor, and a greeter at Wal-Mart.  (AR at 56.)  Lower has been diagnosed with paranoid schizophrenia leading to two breaks from reality requiring hospitalization in the mid 1980's.  (AR at 155-157.)  In 2001 and 2005 he was also diagnosed with severe obstructive sleep apnea. (AR at 150, 206.)

On February 23, 2004, Lower filed an application for disability benefits. (AR at 43.) Lower claims disability due to mental impairments including anxiety, depression, schizophrenia and obsessive compulsive disorder, and physical impairments of sleep apnea and tremors.  (AR at 23, 28, 55.) He alleges an onset date of January 3, 2004.  (AR at 43.) These claims were denied initially and on reconsideration, and Lower timely requested a hearing.  (AR at 23-26, 28-29, 30.)  On September 9, 2005, Lower appeared and testified at the hearing before ALJ Verrell Dethloff.  (AR at 450-464.)  On March 1, 2006, the ALJ issued an unfavorable decision, concluding that Lower could perform his past relevant work as a janitor.  (AR at 11-20.)   Lower's appeal to the Appeals Council was denied, (AR at 6-10) making the ALJ's ruling the final decision of the Commissioner. 42 U.S.C. § 405(g).  Lower timely filed the present action challenging the Commissioner's decision.  (Dkt. No. 3.)

**I. Commissioner's Decision**

At step one, the ALJ found that Lower had not engaged in substantial gainful activity since the alleged onset date. (AR at 19.)  At step two, the ALJ found Lower's functional psychotic disorders, sleep apnea, and sleep-related breathing disorders to be "severe."  Id. At step three, the ALJ found Lower's disorders did not meet or medically equal one of the listed impairments. Id. The ALJ then found Lower's allegation regarding his limitations to be "not totally credible," and determined that he had the residual functional capacity ("RFC") for a "full range of physical work activity, with mental

ORDER REVERSING COMMISSIONER- 2

impairments restricting him to more simple repetitive jobs with limited interaction with the public." Id. at 20.  At step four, the ALJ determined that Lower's past relevant work as a janitor was not precluded by his RFC.  Id.  Finally, the ALJ found Lower was not under a disability because his "medically determinable functional psychotic disorders, sleep apnea, and sleep-related breathing disorders do not prevent him from performing his past relevant work." Id.

## II. Magistrate Judge Benton's Recommendation

Magistrate Judge Benton recommends that the Court affirm the Commissioner's decision. Magistrate Judge Benton concluded that the ALJ's credibility decision was not supported by substantial evidence, but she found that Lower's treatment record constituted substantial evidence in support of the ALJ's findings.  Further, Magistrate Judge Benton found that the ALJ properly rejected the lay testimony as to Lower's limitations.

## III. Lower's Objections

Lower makes seven objections to Magistrate Judge Benton's recommendation that the Commissioner's decision be affirmed.  Lower's objects as follows:

1.  Although Magistrate Judge Benton found that the ALJ erred in his credibility determination, she failed to address the impact of this error on the ALJ's decision, and failed to rectify the error. (Pl.'s Obj. at 2.)

2.  Magistrate Judge Benton failed to address the fact that the ALJ's RFC assessment did not include any physical limitations resulting from Lower's sleep apnea. (Pl.'s Obj. at 2 lines 6-9.)

3.  Magistrate Judge Benton failed to address the issue of whether the ALJ erred as a matter of law by failing to provide specific and legitimate reasons for disregarding Dr. Parlatore's opinion evidence, and instead provided her own rationale.  (Pl.'s Obj. at 4.)

4.  Magistrate Judge Benton failed to address the fact that the ALJ's step 3 findings were contrary to the State agency psychologist's opinion.  (Pl.'s Obj. at 8 lines 1-7.)

5.  Lower objects to Magistrate Judge Benton's conclusion that the ALJ properly rejected the Nurse Practitioner's opinions.  (Pl.'s Obj. at 8 note 2.)

1    6. Lower objects to Magistrate Judge Benton's conclusion that the ALJ properly evaluated Dr.

2    Sandvik's opinions of the severity of Lower's functional limitations.  (Pl.'s Obj. at 11.)

3    7. Magistrate Judge Benton failed to address the ALJ's failure to consider the testimony of

4    Mark Lower and Mark Crews, and to make a credibility finding regarding these lay witnesses. (Pl.'s

5    Obj. at 12.)

6                                      **DISCUSSION**

7    **I. Standard of Review**

8        The Court may set aside the Commissioner's denial of social security disability benefits when

9    the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a

10   whole.  Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence is defined as more

11   than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind

12   might accept as adequate to support a conclusion.  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir.

13   1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and

14   resolving ambiguities.  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  Where the evidence is

15   susceptible to more than one rational interpretation, it is the Commissioner's conclusion which must be

16   upheld.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

17       If the Court determines that the ALJ committed reversible error, it has the discretion to remand

18   for further proceedings or to award benefits.  McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir.

19   2002).  Remand for further proceedings is appropriate where additional proceedings would remedy

20   defects in the ALJ's decision, or where the Commissioner is in a better position to evaluate the

21   evidence.  Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).  Remand for an award of benefits is

22   preferred where "the record has been fully developed and further administrative proceedings would

23   serve no useful purpose."  McCartey, 298 F.3d at 1076.  Furthermore, any erroneously rejected

24   evidence should be credited and an immediate award of benefits directed where:

25           (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2)
             there are no outstanding issues that must be resolved before a determination of disability
26

ORDER REVERSING COMMISSIONER- 4

can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

## II.  Evaluating Disability

The claimant bears the burden of proving that he is disabled within the meaning of the Act. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999).  The Act defines disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).  A person is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520(a-g).  If the claimant is found to be "disabled" or "not disabled" at any step there is no need to go on to the next step. Id. § 404.1520(a)(4).  The claimant bears the burden of proof during steps one through four.  Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999).  At step five the burden shifts to the commissioner.  Id.

At step one, the claimant must establish that he is not engaged in any substantial gainful activity. 20 C.F.R § 404.1520(a)(4)(i).  If he is engaged in substantial gainful activity then he is not disabled. Id.  At step two, the claimant must establish that he has one or more medically severe impairments or combinations of impairments. Id. § 404.1520(a)(4)(ii).  If the claimant does not have a severe impairment then he is not disabled. Id.  At step three, the Commissioner will determine whether the claimant's impairment meets or equals any of the listed impairments described in the regulations. Id. § 404.1520(a)(4)(iii).  If the claimant's impairments meet one of the listings for the required twelve-month duration then he is disabled. Id.

If the claimant's impairments neither meet nor equal one of the impairments listed then the Commissioner must evaluate the claimant's RFC based on all of the relevant medical and other evidence in the record. Id. § 404.1520(a)(4)(iv). The Commissioner has interpreted RFC to mean the following:

> [The claimant's] maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis[.] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. RFC does not represent the least an individual can do despite his or her limitations or restrictions, but the most.

Soc. Sec. Ruling ("SSR") 96-8p, at 2. The claimant's RFC is then used at step four to determine if he can perform any past relevant work, and at step five to determine if he can adjust to other work. 20 C.F.R. § 404.1520(e). At step four, if the claimant is able to perform his past relevant work then he is not disabled. Id. § 404.1520(a)(4)(iv). At step five, the Commissioner must show that he can perform some other work that exists in significant number in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. Id. § 404.1520(g) If the Commissioner finds the claimant unable to perform other work, then the claimant is determined to be disabled. Id.

## III. Discussion of the Objections

### A. Error Regarding Credibility Determination.

The ALJ's finding that Lower's testimony regarding his limitations was "not totally credible" is not supported by substantial evidence. "Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)(internal citations omitted). "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." Id. (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. Id. (internal citations omitted). Because the ALJ cited no evidence that Lower was

ORDER REVERSING COMMISSIONER- 6

malingering, the ALJ was required to provide clear and convincing reasons to reject Lower's testimony regarding his limitations.

Lower claims that his diagnosed disabilities prevent him from working.  (AR at 55.)  He testified that his metal disabilities and inability to stay awake have caused him to leave or be fired from his past relevant work.  (AR at 454-456, 459-461.)  He testified that at his longest sustained job he was only able to work three days a week due to his sleep apnea.  (AR at 455.)  And more recently, he fell asleep standing up as a greeter at Walmart.  (AR at 456.)

The ALJ supported his credibility finding by noting that Lower has: (1) on many occasions in the treatment notes denied any symptoms of depression or mania; (2) been encouraged to exercise; (3) stated on numerous occasions that his medications are working and that they have no side effects; and (4) been active in church, ministering to others, and so forth.  (AR at 18-19.)  Magistrate Judge Benton concluded that the ALJ's basis for discrediting Lower was not supported by the record because Lower's medically diagnosed severe sleep apnea was a "likely basis for daytime drowsiness and a contributing cause for [Lower's] loss of work." (R & R at 7 p. 1.)  The Court agrees with Magistrate Judge Benton that the ALJ's credibility determination was not supported by the record.  In addition to the reasons cited by Magistrate Judge Benton, the court notes the following additional reasons why the ALJ's credibility determination was not supported by the record.

1. <u>Lower's Statements Regarding Symptoms and Effect of Medications</u>

Although the ALJ does not site specific instances of denial, a review of the treatment notes does substantiate his claim that Lower occasionally denied symptoms of depression or mania.  See (AR 211, 213, 221, 230.)  In addition, the treatment notes contain numerous statements from Lower indicating that his medications are working and have little to no side effects. (AR at 225, 228, 235, 243, 249.)  Lower made these statements with regard to his <u>psychological</u> disorders and medications.  Although this evidence could form the basis for a determination that Lower's testimony regarding his mental limitations was not totally credible, it is not a "clear and convincing" reason to discredit Lower's apnea related testimony.  In fact, in some of the treatment notes sited, Lower follows up his

1   statements regarding his psychological treatment by noting that his sleep is still troubled.  (AR at 213,

2   225.)

3          The ALJ was required to identify what testimony was not credible, and what evidence

4   undermines Lower's complaints.  The ALJ's vague and general statements provide neither of these

5   requirements.  Although the Court could speculate as to the ALJ's rationale, that line of inquiry is not

6   allowed when reviewing decisions under the Act.  Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir.

7   2001)(courts cannot affirm the decision of an agency on a ground that the agency did not invoke in

8   making its decision).

9          2. Lower's Daily Activities

10         The ALJ also bases his credibility finding on the fact that Lower had been encouraged to

11  exercise and was active in his church.  (AR at 18-19.)  The discrediting of testimony based on a

12  claimant's ability to carry on certain daily activities such as shopping, driving, or limited exercise has

13  been repeatedly rejected in this circuit.  Orn v. Astrue, ___ F.3d ___, 12, 2007 WL 2034287 (9th Cir.

14  2007), citing Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001).  "[The Act] does not require

15  that claimants be utterly incapacitated to be eligible for benefits." Fair v. Bowen, 885 F.2d 597, 603

16  (9th Cir. 1989).  Daily activities can form a ground for an adverse credibility determination only "if the

17  claimant is able to spend a substantial part of [his] day performing [activities] that are transferable to a

18  work setting." Smolen, 80 F.3d at 1284.  The ALJ did not explain how any of the daily activities cited

19  could be transferred to a potential work setting.  The fact that Lower was encouraged to exercise for

20  his overall health, and was active in his church, does not signify that he is capable of working on a

21  "regular and continuous basis." Thus, the ALJ's credibility find is not supported by substantial

22  evidence.

23         3. Legal Effect

24         When, as here, an ALJ improperly rejects a claimant's testimony, and the claimant would be

25  disabled if his testimony were credited, that testimony is credited as a matter of law.  Lester, 81 F.3d at

26

834.  Here, Lower's testimony that he could not work on a "regular and continuous" basis because of his limitations must be credited as a matter of law.

**B.  RFC Assessment.**

The ALJ erred by failing to include any physical limitations in his RFC assessment.  As the ALJ properly noted, in making the RFC assessment he must consider a claimants impairments and "any related symptoms" based on the relevant medical and other evidence.  20 C.F.R. §§ 404.1545(a)(1) & (3). (AR at 18.)  However, after making this general statement, and then incorrectly discrediting Lower's testimony, the ALJ found Lower to have the RFC for a "full range of work activity on a physical basis" without any limitations due to sleep apnea.  Magistrate Judge Benton concluded that this assessment was based on substantial evidence because the treatment notes showed that Lower's use of a Continuous Positive Airway Pressure ("CPAP") devise improved his physical conditions.  (R & R at 7.)  Furthermore, she stated that this type of improvement demonstrates that Lower's sleep apnea would not satisfy the twelve month duration requirement under the Act.  (Id.)  But this reasoning is not present in the ALJ's decision, and cannot form the grounds for affirmation.  Pinto, 849 F.3d at 847.  The ALJ's RFC assessment contains no consideration of Lower's physical limitation due to sleep apnea, and this failure constitutes legal error.

**C.  Dr. Parlatore's Opinion Evidence.**

Dr. Parlatore remarked that Lower had severe limitations in his "[a]bility to respond appropriately to and tolerate the pressures and expectations of a normal work setting[.]"  (AR at 264.)  This diagnosis was acknowledged in the ALJ's decision once, and never referred to again.  (AR at 17.)  The ALJ noted the other doctor's findings, all of which indicate a lower level of limitation than Dr. Parlatore had expressed, but never described the weight afforded to each doctor.  (AR at 17-19.)  Nor did he explicitly reject Dr. Parlatore's opinion, despite the fact his findings contradict Dr. Parlatore's severe diagnosis.

The ALJ rejected Dr. Parlatore's opinion.  Magistrate Judge Benton acknowledged that the ALJ rejected the opinion of Dr. Parlatore, but concluded that the ALJ had a "salient" reason, and that

the decision was based on "substantial evidence." (R & R at 7.)  "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, 81 F.3d at 830-831 (citation omitted).  Furthermore, an ALJ errs when he fails to explicitly reject a doctor's opinion, or set forth specific, legitimate reasons for crediting one doctor over another.  Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996).

Magistrate Judge Benton pointed out that several nurse practitioner's treatment notes showed improvement over a twenty year period.  This fact was noted by the ALJ, but was not used as a rationale for rejecting Dr. Parlatore's opinion. (AR at 17-18.)  Because Dr. Parlatore's opinion was not explicitly rejected, nor specific and legitimate reasons given for the rejection, the ALJ's decision constitutes legal error.

**D. The ALJ's Step 3 Findings were Contrary to the State Agency Psychologist's Opinion.**

Dr. Comrie gave his opinion as the State agency psychologist.  (AR at 177-192.)  "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act."  SSR 96-6p, at 2. Dr. Comrie found Lower to have moderate limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace.  (AR at 192.)  The ALJ noted Dr. Comrie's opinion, but found that Lower had only mild limitations in his activities of daily living.  (AR at 18-19.)  A finding of mild limitation in this area was supported by Dr. Gregg (AR at 168), but the ALJ gave no explanation for his rejection of Dr. Comrie's finding and his apparent support for Dr. Gregg's. (AR at 18-19.)  As explained above, this amounts to error.

**E.  Nurse Practitioner's Opinions.**

Magistrate Judge Benton correctly concluded that the ALJ had properly rejected the lay testimony of nurse pratitioner.'s McCarthy and Werny.  Her conclusion is supported by the evidence and law.  The ALJ need only give reasons germane to each witness to reject lay testimony.  Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006).  As explained by Magistrate Judge

Benton, the ALJ provided germane reasons as to the two nurse practitioner's. (AR at 17-18.) And the nurse practitioner's are lay witnesses because they are not acceptable medical sources. 20 C.F.R. §§ 404.1513(a), (d)(1).

### F. Dr. Sandvik.

Magistrate Judge Benton correctly concluded that Dr. Sandivik offered no opinion on Lower's functional assessment. Her conclusion is supported by the evidence and law. Dr. Sandvik assigned to Lower a Global Assessment of Functioning score ("GAF") of 40 along with the comment that "[at] times he is very paranoid with impairments in work, relationships, and judgment." (AR at 157.) This GAF score alone does not amount to opinion on Lower's functional limitations. See 65 Fed. Reg. 50,746, 50,764-50,765 (August 12, 2000)(regulatory comment explaining that the GAF scale does not have a direct correlation to the severity requirements of the mental disorder listings under the Act). Lower's contention that the low GAF score, combined with Dr. Sandvik's comment, should have been considered in the RFC assessment is without merit. Dr. Sandvik's language mirrors the Diagnostic and Statistical Manual's ("DSM-IV") description of a 40 GAF score, and in this way can be seen as providing his rationale as opposed to an additional comment. See American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 34 (4th T.R. ed. 2000).

### G. Lay Testimony of Mark Lower and Mark Crews.

The ALJ's failure to address the testimony of Mark Lower and Mark Crews was error. "Lay witness testimony as to a claimant's symptoms or how an impairment affects the ability to work is competent evidence [that] cannot be disregarded without comment. Nguyen, 100 F.3d at 1467. Lay testimony may be disregarded only if the ALJ gives "reasons that are germane to each witness." Stout, 454 F.3d at 1053. In Stout, the 9th Circuit conclusively joined "our sister circuits [who have] consistently reversed the Commissioner's decisions for failure to comment on such competent testimony." Id. at 1056.

Mark Lower and Mark Crews both submitted Third Party Functional Reports describing Lower's difficulty with people, household chores, and grooming, along with his limitations at work due

to his sleep apnea and somnolence. (AR at 100, 109.)  This testimony speaks directly to Lower's ability to work and is supported by objective evidence (i.e. the diagnosis of severe sleep apnea).  It could not be ignored by the ALJ.  The ALJ was required to give reasons germane to each witness if he wished to discredit or disregard the testimony of Mark Lower and Mark Crews.  Although Lower raised this issue, Magistrate Judge Benton did not address this error in her Report and Recommendation.  The ALJ's silent disregard for this competent evidence was error.

**IV.  Remand for Award of Benefits**

Because the ALJ's decision to discredit Lower's testimony is not supported by substantial evidence, and because of the several legal errors in the ALJ's decision, the Court must either remand for further proceedings or for an award of benefits.  As discussed, the Court has discretion in this decision, but may remand for award of benefits when the requisite elements are met. See McCartey, 298 F.3d at 1076-77.  Those elements are met here: (1) the ALJ failed to provide legally sufficient reasons for rejecting Lower's evidence;  (2) no outstanding issues remain to be resolved before a determination of disability can be made; and (3) the ALJ would be required to find Lower disabled if he considered Lower's credited evidence.   Under these circumstances, "the record has been fully developed and further administrative proceedings would serve no useful purpose." Id.

**CONCLUSION**

The Commissioner's decision was not supported by substantial evidence, and was based on legal error.  Because the Commissioner would be required to find Lower disabled if the improperly rejected evidence were credited, further administrative proceedings would serve no useful purpose.  The Court declines to adopt Magistrate Judge Benton's Report and Recommendation.  The Court REVERSES the Commissioner's final decision, and REMANDS for calculation of an award of benefits.

DATED:  September 21, 2007.

s/ Marsha J. Pechman
Marsha J. Pechman
United States District Judge

ORDER REVERSING COMMISSIONER- 12